UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

United States of America

      v.                                      Criminal No. 14-cr-093-03-LM
                                               Opinion No. 2020 DNH 197 P

Charles Fowle

# O R D E R

Charles Fowle moves for compassionate release under 18 U.S.C. § 3582(c)(1)(A).  The government does not dispute that Fowle has exhausted his administrative remedies and has health conditions that create extraordinary and compelling reasons for release.  See 18 U.S.C. § 3582(c)(1)(A).  The government objects to release based on the sentencing factors set forth in 18 U.S.C. § 3553(a). The court has considered the goals of sentencing and finds that release is consistent with § 3553(a).

## COMPASSIONATE RELEASE STATUTE

A court may grant so-called "compassionate release" to a defendant under 18 U.S.C. § 3582(c)(1)(A).  The statute provides, in relevant part, that:

> [T]he court, upon motion of the Director of the Bureau of Prisons or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from

the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—

      (i)     extraordinary and compelling reasons warrant such a reduction . . .

. . .

and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . . .

18 U.S.C. § 3582(c)(1)(A); see also U.S.S.G. § 1B1.13 (sentencing guidelines policy statement on compassionate release).

Where, as here, a motion for compassionate release is properly before the court, the court must determine if defendant is eligible for release. The statutory language quoted above requires that defendant show that "extraordinary and compelling reasons warrant" a reduction in his sentence, that the court consider the factors set forth in 18 U.S.C. § 3553(a) to the extent applicable, and that the reduction be "consistent" with the Sentencing Commission's "applicable policy statements." 18 U.S.C. § 3582(c)(1)(A). Some courts have held that the policy statement, U.S.S.G. § 1B1.13, is not applicable to a prisoner's motion for compassionate release. See United States v. Brooker, 976 F.3d 228, 234–36 (2d Cir., 2020). The policy statement, however, provides "helpful guidance" even if consistency with § 1B1.13 is not a strict statutory requirement. See United States v. Dent, Crim. No. 2:15-CR-10-DBH-01, 2020 WL 6157693, at *1 (D. Me. Oct. 21,

2020).  For example, the policy statement requires that "the defendant is not a danger to the safety of any other person or to the community" in order to be eligible for a sentence reduction.  U.S.S.G. § 1B1.13(2).  Since public protection is a sentencing factor under § 3553(a), dangerousness is a consideration in every compassionate release case.  See United States v. Bradshaw, No. 1:15-CR-422, 2019 WL 7605447, at *3 (M.D.N.C. Sept. 12, 2019) (explaining overlap between dangerousness requirement in compassionate release policy statement and § 3553(a) requirement that courts consider the need to protect the public).

The defendant bears the burden of showing that he is entitled to a sentence reduction.  United States v. Hilow, No. 15-CR-170-JD, 2020 WL 2851086, *3 (D.N.H. June 2, 2020).  And the court has "broad discretion in deciding whether to grant or deny a motion for sentence reduction."  United States v. Britton, Crim. No. 18-cr-108-LM, 2020 WL 2404969, at *2 (D.N.H. May 12, 2020) (internal quotation marks omitted).

## BACKGROUND

Fowle is currently imprisoned for a violation of supervised release.  Fowle's underlying convictions are: (1) possession with intent to distribute oxycodone and (2) conspiracy to distribute and possession with intent to distribute marijuana.  See 21 U.S.C. §§ 841(a)(1), 846.  He was sentenced on September 28, 2015 to 37 months incarceration and 3 years supervised release.  He was released on February 28, 2017.

Since his release, Fowle has violated conditions of supervised release three times.  Fowle's first violation was for repeatedly using marijuana and cocaine, refusing to permit his probation officer to visit and search him, and associating with a felon.  On February 27, 2018, the court sentenced Fowle to time served (49 days) and 24 months of supervised release.[1]

Fowle's second violation was for use of marijuana and cocaine, and for failure to report a change in employment.  On January 11, 2019, the court sentenced Fowle on that violation to 9 months incarceration and 12 months supervised release.  Fowle was released from custody on May 8, 2019.

Less than one week following his release, Fowle committed his third violation.  This is the violation for which he is currently incarcerated.  During his initial visit with his probation officer, Fowle provided a urine sample and then destroyed it by dumping the contents of the collection cup on the ground.  The court also found that Fowle had used cocaine and marijuana since his release.  The court sentenced him on this third violation on January 16, 2020.  Although the advisory guideline range was 6 to 12 months, the court sentenced Fowle to the statutory maximum: 24 months incarceration with no additional supervised release.  Fowle appealed this sentence to the First Circuit.  See USCA no. 20-1134.  That appeal is still pending.

---

[1] Additionally, and unrelated to these probation violations, Fowle was arrested for DWI on July 25, 2018. He pled guilty to DWI first offense on May 28, 2020.  See doc. no. 396-3.

For this most recent period of incarceration, Fowle has served 13 months, more than one-half of his sentence.  His projected release date is July 4, 2021.

## DISCUSSION

I.   Procedural History

There is no dispute that Fowle has exhausted his administrative right to appeal within BOP and that his motion is properly before the court. Fowle filed this motion for compassionate release while his underlying sentence was on appeal to the First Circuit.  See USCA no. 20-1134.  After this court ordered him to show cause why it had jurisdiction over his motion, Fowle moved for an indicative ruling under Federal Rule of Criminal Procedure 37 and Federal Rule of Appellate Procedure 12.1.  See doc. no. 400; see also United States v. Pena, 463 F. Supp. 3d 118 (D. Mass. 2020) (issuing an indicative ruling in favor of defendant's motion for compassionate release).  On November 4, 2020, after hearing oral argument on the motion, the court issued an indicative ruling in favor of release.  See Endorsed Order dated Nov. 4, 2020.  On November 6, 2020, the First Circuit remanded Fowle's case to this court to rule on the motion.  See doc. no. 406.

II.   Extraordinary and Compelling Reasons

A prisoner's medical condition may be an "extraordinary and compelling reason" that justifies a sentence reduction.  See U.S.S.G. § 1B1.13, App. Note 1. During the current pandemic, health factors that put a prisoner at "a substantially

5

higher risk due to COVID-19" along with "a documented risk of the disease in the facility where the prisoner is incarcerated" may, together, "demonstrate extraordinary and compelling reasons to reduce the prisoner's sentence." United States v. Bischoff, 460 F. Supp. 3d 122, 125 (D.N.H. 2020) (collecting cases in support). To determine whether a prisoner is at a particularly high risk of experiencing severe illness from COVID-19, courts have generally looked to the guidelines from the Centers for Disease Control and Prevention ("CDC"). See, e.g., United States v. Nygren, No. 1:16-CR-00106-JAW, 2020 WL 4208926, at *11-12 (D. Me. July 22, 2020).

Fowle claims he is at high risk of serious illness if he contracts COVID-19 because of two medical conditions, hypertension and hepatitis C. Additionally, he is a long-time, heavy smoker. See doc. no. 396-1. The government concedes that Fowle has medical conditions that place him at high risk of severe illness should he contract COVID-19. The court agrees.[2] Viewed collectively, Fowle's medical conditions and history of smoking places him at an increased risk for severe illness

---

[2] According to the CDC, people with hypertension "might be at an increased risk" and people who smoke "are at an increased risk" for severe illness. CDC, People With Certain Medical Conditions, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html?CDC_AA_refVal=https%3A%2F%2Fwww.cdc.gov%2Fcoronavirus%2F2019-ncov%2Fneed-extra-precautions%2Fgroups-at-higher-risk.html (last visited Nov. 10, 2020). Hepatitis C does not create an increased risk if infected, based on our current understanding of the disease, but it is a serious medical condition and the CDC notes that any person with serious underlying medical conditions may be at a higher risk for severe illness. CDC, What to Know About Liver Disease and COVID-19, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/liver-disease.html (last visited Nov. 10, 2020).

if he is infected.  See United States v. Hilow, Crim. No. 15-cr-170-JD, 2020 WL 2851086, at *4 (D.N.H. June 2, 2020) (discussing the collective risks of several medical conditions).

Fowle has also shown that the risk that he will become infected with COVID-19 while incarcerated is more than speculative.  Many courts, including this one, have recognized that the nature of the prison environment itself enhances the likelihood that prisoners will catch this highly contagious virus.  See Gomes v. US Dep't of Homeland Sec., Acting Sec'y, 460 F. Supp. 3d 132, 138–39 (D.N.H. 2020); Bischoff, 460 F. Supp. 3d at 125 (collecting cases).  That is especially true where there has already been a documented outbreak at the prison.

At FCI Danbury, where Fowle is housed, 81 prisoners and 65 staff members have recovered from the virus and one prisoner has died.[3]  This spring, FCI Danbury experienced a "serious outbreak" of the virus.  Martinez-Brooks v. Easter, 459 F. Supp. 3d 411, 439 (D. Conn. 2020).  Although FCI Danbury is not presently experiencing an outbreak, a prison—by nature of its size, the number of its prisoners, and the difficulty of keeping prisoners physically distant from one another—is a potential "tinderbox" for this contagious virus.  See Gomes, 460 F. Supp. 3d at 138–39; see also United States v. Tate, No. 17-CR-30037, 2020 WL 3791467, at *4 (C.D. Ill. July 7, 2020) (collecting cases finding extraordinary and compelling circumstances even when the facility does not have confirmed active

---

[3] BOP, COVID-19, https://www.bop.gov/coronavirus/, (Danbury FCI Facility) (last visited Nov. 10, 2020).

cases of COVID-19).  Considering all the above facts, the court finds that Fowle has shown a particularized risk of contracting COVID-19 while incarcerated.

In summary, the court finds that Fowle's high-risk medical conditions combined with the increased likelihood of contracting the virus while at FCI Danbury constitute extraordinary and compelling reasons supporting his release.

III.    Sentencing Factors

Finally, the court considers whether a reduction in defendant's sentence is consistent with the sentencing factors outlined in 18 U.S.C. § 3553(a) to the extent they are applicable.  See 18 U.S.C. § 3582(c)(1)(A).  The § 3553(a) factors a court must consider at sentencing include the nature and circumstances of the defendant's offense and the defendant's personal history and characteristics.  18 U.S.C. § 3553(a)(1).  Section 3553(a) requires the court to ensure that the sentence imposed reflects the seriousness of the offense that was committed, promotes respect for the law, provides just punishment, affords adequate deterrence, protects the public from further crimes of the defendant, and provides the defendant with needed training, medical care, and other treatment in the most effective way.  18 U.S.C. § 3553(a)(2).  Section 3553(a) further requires the court to consider the kinds of sentences available, the Sentencing Guidelines, the need to avoid unwarranted sentencing disparities, and the need to provide restitution to any victims.  18 U.S.C. § 3553(a)(3)-(7).  The court assesses the relevant sentencing factors below.

a. <u>Dangerousness</u>

Fowle committed two serious drug offenses.  Since release from his original sentence, he has continued to struggle with his long-term drug addiction.  Although he has personally used substances, he has not been accused or convicted of distribution.

Fowle has served the entirety of his incarceration for the initial offense and is now incarcerated for violating supervised release.  Fowle's history of violations show his contempt for authority.  On one occasion he refused to permit his probation officer into his apartment and admitted later to using controlled substances.  Most recently, he disobeyed his probation officer by dumping the contents of a urine sample out of the collection cup and throwing it to the ground.  While this behavior is unacceptable and deserving of punishment, it does not support a finding that Fowle has a tendency toward violence or that he is likely to be a danger to the community.  His criminal history includes only one crime of violence, a misdemeanor simple assault 23 years ago at age 18.  <u>See</u> doc. no. 158.

In short, Fowle is not likely to be a danger to the community if released.  Given that dangerousness is a paramount concern as the court weighs the decision to grant a sentence reduction, this factor favors release.

b. <u>Seriousness of the Offense, Adequate Deterrence, Respect for the Law, and Just Punishment</u>

Fowle is currently incarcerated for a supervised release violation for "tamper[ing] with evidence in a way that showed utter contempt for the probation

officer." Doc. no. 398. The court punished Fowle severely for that offense, sentencing him to 24 months when the sentencing guideline range for the violation was 6 to 12 months. Fowle has served nearly 13 months of that sentence.

Considering that Fowle's offense was serious but non-violent, and that his time served has surpassed the high end of the sentencing guideline range for the violation, the court finds that these factors do not weigh against release.

c. <u>Provision of Needed Educational or Vocational Training, Medical Care, or Other Treatment in Most Effective Manner</u>

Fowle is not receiving substance use treatment while incarcerated. However, Fowle needs ongoing treatment to address his long-term, underlying drug addiction issues. Release on conditions that include drug treatment will allow Fowle to access these services. In Fowle's case, early release may enhance public safety because he will be able to begin receiving treatment to help address his underlying drug addiction. Accordingly, the court finds that this factor weighs in favor of release.

d. <u>Summary</u>

Fowle's documented hypertension, hepatitis C diagnosis, and history of heavy smoking weigh in favor of release. Fowle would be at an increased risk of serious illness if infected, and his incarceration at FCI Danbury increases his risk of exposure to the virus that causes COVID-19.

Fowle has served 13 months of his 24-month sentence. With good time, he will be released in roughly 7 months. Fowle's 13 months of incarceration adequately serves the goals of both general and specific deterrence for his

supervised release violation.  It also effectively reflects the seriousness of Fowle's

criminal conduct, particularly since he completed his sentence for the original

charges and is now incarcerated on a violation of supervised release.  Other than a

simple assault at age 18, Fowle has no history of violence and is not likely to be a

danger to the public.  While his repeated violations illustrate that he can be

contemptuous of authority, he is also coping with a serious drug addiction problem.

Should Fowle remain in prison for another 7 months, it does not appear likely that

he will receive treatment for his substance abuse issues.

The court intended its sentence to send Fowle a strong, specific deterrent

message.  The court did not intend for the sentence to expose Fowle to a virus that

could be lethal, based on his documented health issues.

Considering all these factors, the court finds that Fowle has met his burden

of showing that he is entitled to a sentence reduction under § 3582(c)(1)(A).  A

sentence reduction to time served followed by a term of supervised release on home

confinement until July 4, 2021, will best serve the goals of sentencing as outlined

above.

## CONCLUSION

For the foregoing reasons, defendant's motion for compassionate release, doc.

no. 396, is granted as follows:

1) The defendant's sentence will be reduced to time served.

2) The defendant will be placed on a term of supervised release until July 4,
   2021, which is equivalent to what his discharge date would have been from

the BOP, during which time he will remain on home confinement under the terms of release outlined in Appendix A.

3)  During the terms of supervised release, the defendant shall be subject to the Supervision Conditions as set forth in Appendix A.

4)  The BOP shall release the defendant immediately following processing.

5)  The court recommends that the BOP screen the defendant for COVID-19 within twelve hours prior to his release, and if he is displaying symptoms consistent with COVID-19, test the defendant and share the results with the United States Probation Office in the District of New Hampshire.

6)  The court will issue an amended criminal judgment.

SO ORDERED.

_____
Landya McCafferty
United States District Judge

November 10, 2020

cc:  Counsel of Record
        U.S. Probation
        U.S. Marshal

12

# APPENDIX A

SUPERVISION CONDITIONS:

While under supervision, the defendant must comply with the following mandatory conditions:

1. The defendant must not commit another federal, state, or local crime.

2. The defendant must not unlawfully possess a controlled substance.

3. The defendant must refrain from any unlawful use of a controlled substance. The defendant must submit to one drug test within 15 days of release from imprisonment and at least two periodic drug tests thereafter, not to exceed 72 drugs tests per year.

4. The defendant shall not possess a firearm, ammunition, destructive device, or any other dangerous weapon.

5. The defendant must cooperate in the collection of DNA as directed by the probation officer.

While under supervision, the defendant must also comply with the following standard conditions of supervision that have been adopted by this court:

1. The defendant must report to the probation office in the federal judicial district where he is authorized to reside within 72 hours of his release from imprisonment, unless the probation officer instructs him to report to a different probation office or within a different time frame.

2. After initially reporting to the probation office, the defendant will receive instructions from the court or the probation officer about how and when he must report to the probation officer, and he must report to the probation officer as instructed.

3. The defendant must not knowingly leave the federal judicial district where he is authorized to reside without first getting permission from the court or the probation officer.

4. The defendant must answer truthfully the questions asked by his probation officer.

5. The defendant must live at a place approved by the probation officer. If he plans to change where he lives or anything about his living arrangements (such as the people he lives with), the defendant must notify the probation officer at least 10 days before the change. If notifying the probation officer in advance is not possible due to unanticipated circumstances, the defendant must notify the probation officer within 72 hours of becoming aware of a change or expected change.

6. The defendant must allow the probation officer to visit him at any time at his home or elsewhere, and he must permit the probation officer to take any items prohibited by the conditions of his supervision that the probation officer observes in plain view.

7. The defendant must work full time (at least 30 hours per week) at a lawful type of employment, unless the probation officer excuses him from doing so. If the defendant does not have full-time employment he must try to find full-time employment, unless the probation officer excuses him from doing so. If the defendant plans to change where he works or anything about his work (such as his position or his job responsibilities), the defendant must notify the probation officer at least 10 days before the change. If notifying the probation officer at least 10 days in advance is not possible due to unanticipated circumstances, the defendant must notify the probation officer within 72 hours of becoming aware of a change or expected change.

8. The defendant must not communicate or interact with someone he knows is engaged in criminal activity. If the defendant knows someone has been convicted of a felony, he must not knowingly communicate or interact with that person without first getting the permission of the probation officer.

9. If the defendant is arrested or questioned by a law enforcement officer, he must notify the probation officer within 72 hours.

10. The defendant must not own, possess, or have access to a firearm, ammunition, destructive device, or dangerous weapon (i.e., anything that was designed, or was modified for, the specific purpose of causing bodily injury or death to another person such as nunchakus or tasers).

11. The defendant must not act or make any agreement with a law enforcement agency to act as a confidential human source or informant without first getting the permission of the court.

12. If the probation officer determines that the defendant poses a risk to another person (including an organization), the probation officer may require him to notify the person about the risk and he must comply with that instruction. The probation officer may contact the person and confirm that the defendant has notified the person about the risk.

13. The defendant must follow the instructions of the probation officer related to the conditions of supervision.

In addition, the defendant must comply with the following special conditions:

1. Upon release, the defendant must obtain transportation directly from the prison to the defendant's approved residence.  The defendant must eliminate or minimize any stops during that transport.

2. The defendant must self-quarantine in an approved residence during the first fourteen days of his supervised release.

3. The defendant is restricted to their residence at all times during his term of supervised release except for employment; education; religious services; medical, substance abuse, or mental health treatment; attorney visits; court appearances; court-ordered obligations; or other activities as pre-approved by the officer. During this time period, the defendant's location will be monitored at the discretion of their probation officer.  The probation officer will determine what type of technology to use to monitor the defendant. The defendant must follow the rules and regulations of any monitoring program. The defendant must pay for the cost of the program to the extent he is able, as determined by the probation officer.

4. The defendant must participate in an inpatient or outpatient substance abuse treatment program and follow the rules and regulations of that program. The probation officer will supervise the defendant's participation in the program (provider, location, modality, duration, intensity, etc.).  The defendant must pay for the cost of treatment to the extent he is able, as determined by the probation officer.

3

5.  The defendant must submit to substance abuse testing to determine if he has used a prohibited substance.  The defendant shall pay for the cost of testing to the extent he is able, as determined by the probation officer.  The defendant must not attempt to obstruct or tamper with the testing methods.

6.  The defendant must not use or possess alcohol.

7.  The defendant must not knowingly purchase, possess, distribute, administer, or otherwise use any psychoactive substances (e.g., synthetic marijuana, bath salts, etc.) that impair a person's physical or mental functioning, whether or not intended for human consumption, except with the prior approval of the probation officer.

8.  The defendant must not use or possess any controlled substances without a valid prescription. If the defendant does have a valid prescription, they must disclose the prescription information to the probation officer and follow the instructions on the prescription.

9.  The defendant must submit their person, property, house, residence, vehicle, papers, computers (as defined in 18 U.S.C. § 1030(e)(1)), other electronic communications or data storage devices or media, or office, to a search conducted by a U.S. Probation Officer. Failure to submit to a search may be grounds for revocation of release. The defendant must warn any other occupants that the premises may be subject to searches pursuant to this condition.  The probation officer may conduct a search under this condition only when reasonable suspicion exists that you have violated a condition of supervision and that the areas to be searched contain evidence of this violation. Any search must be conducted at a reasonable time and in a reasonable manner.